RHESA HAWKINS BARKSDALE,
Circuit Judge, dissenting in part and concurring in part:
“Spur not an unbroken horse; put not your plowshare too deep into new land.” Sir Walter Scott, The Monastery [1820]. Answer of the Author of Waverley to the Letter of Captain Clutterbuck, eh. 25. Even though this matter is governed by entirely new ground rules, the majority refuses to remand it for a new trial. Accordingly, I respectfully dissent from that part of its opinion (part A; “The Impact of Prestage ”); in all other respects, I concur.
The Mississippi Supreme Court’s fairly recent holding in Sperry-New Holland v. Prestage, 617 So.2d 248, 253-56 (Miss.1993), that “risk-utility”; rather than “consumer expectations”, is, and has been since 1988, the relevant analysis for Mississippi strict product liability was, to say the least, most unexpected.[1] See, e.g. Batts v. Tow-Motor Forklift *1319 Company, 153 F.R.D. 103, 106 (N.D.Miss.1994) (observing that with Prestage, “the Mississippi Supreme Court let the rest of the world in on the best kept secret in Mississippi jurisprudence”). But, Prestage provided only a broad statement of the law of Mississippi; and, for the reasons set forth below, I cannot join in the majority’s application of this analysis, still in its infancy in Mississippi, to justify not holding a new trial.
The majority has concluded that a new trial is not justified, apparently because Honda would have no reasonable chance of success under the risk-utility analysis. I cannot agree. To date, there are no published cases in Mississippi either applying, or further defining, the Prestage analysis.[2] This alone gives pause to the majority’s conclusion that Honda would necessarily lose under risk-utility. Furthermore, to the extent Prestage can be clearly understood, I am troubled by the majority’s application.
As stated in Prestage, the proper inquiry in Mississippi for a strict product liability claim is whether “the danger-in-fact ... outweighs the utility of the product”. 617 So.2d at 254. But, the Mississippi Supreme Court provided little, if any, guidance for making this inquiry, stating only that, “[i]n balancing a product’s utility against the risk of injury it creates, a trial court may find it helpful to refer to the seven factors enumerated in Professor John Wade’s article, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825.” Id. at 256 n. 3 (emphasis added). Those factors are:
(1) The usefulness and desirability of the product — its utility to the user and to the public as a whole.
(2) The safety aspects of the product— the likelihood that it will cause injury, and the probable seriousness of the injury.
(3) The availability of a substitute product which would meet the same need and not be as unsafe.
(4) The manufacturer’s ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
(5) The user’s ability to avoid danger by the exercise of care in the use of the product.
(6) The user’s anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.
Id. The majority seems to have found one of the above factors, number six, to be disposi-tive, stating:
Acting under [a consumer expectations] instruction, the jury found for Satcher, necessarily finding that the ordinary user would not contemplate the full propensity or tendency of the lack of leg guards to cause physical harm.... Since the jury found for Satcher on this issue [consumer expectations], it is immaterial whether the utility of the motorcycle without guards would weigh less than that danger. Satcher prevailed on the first step and need not be concerned with the second step, and a retrial to submit the second step cannot be justified.
By the foregoing, I understand the majority to conclude that the jury’s finding on consumer expectations trumps, even under the risk-utility analysis.[3] This runs contrary to even the minimal guidance offered by Pres-tage.
*1320 In light of the seven factors suggested by Prestage, a consumer’s awareness of the danger inherent in a product is but one factor to consider in the risk-utility analysis. See also Prestage, 617 So.2d at 256 n. 4 (rejection of “patent danger” rule). Moreover, Prestage held that foreseeability of danger was not dispositive: “In determining whether a product is unreasonably dangerous a reasonable person must conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product.” Id. at 255. (emphasis added) (quoting Whittley v. City of Meridian, 530 So.2d 1341, 1347 (Miss.1988)).[4]
Rightfully so, the majority does not undertake to predict the outcome in this case when all of the suggested factors for risk-utility analysis are applied. With almost no guidance on risk-utility from the Mississippi courts, we cannot forecast how a jury might weigh the factors and evidence here. The majority notes correctly that the risk-utility analysis “adds strings to the bow of the plaintiff, not the defendant” but, as noted, a panel of this court held that, as a matter of law, Honda prevailed under the consumer expectations analysis, and that holding was vacated only because Prestage signaled that consumer expectations was no longer the test in Mississippi. See note 3, supra. To hold now that Honda necessarily loses is a leap I cannot take.
The risk-utility analysis hardly leaves Honda with no “strings in its bow”. For instance, perhaps it could make a case for the high utility of motorcycles in general. For another example, and as to the design at issue, Honda offered evidence that the addition of leg guards, although offering greater protection against the injury suffered by Satcher, might actually increase the likelihood of fatal injury — an obvious important factor in a risk-utility analysis. Does this mean Honda will prevail? I would not — and, indeed, cannot — hazard a guess. I note only the obvious: the ground rules have changed dramatically in Mississippi, and those rules have yet to be defined with any precision. As such, I cannot agree with the majority that it would be unjustified to permit the parties to present their cases to the jury under the proper legal standard. To the contrary, in my opinion, justice requires it.
Accordingly, I must regretfully, but most respectfully, dissent.

. Not only are there no cases expounding Pres-tage, there are also no Mississippi cases detailing the analysis of the cases on which Prestage relied: Whittley v. City of Meridian, 530 So.2d 1341 (Miss.1988), and Hall v. Mississippi Chemical Exp., Inc., 528 So.2d 796 (Miss.1988). Indeed, one court has observed that between 1988, when Mississippi is said to have adopted the risk-utility analysis, and 1993, when Prestage was decided, at least one Mississippi Supreme Court case implied that the consumer expectations test was still applicable. See Batts, 153 F.R.D. at 108-09 (citing Kussman v. V & G Welding Supply, Inc., 585 So.2d 700, 703-04 (Miss.1991)).

. It seems more than somewhat anomalous to give credence to the jury’s verdict for Satcher under the consumer expectations test, when, on appeal from that verdict, our court found that, under this (consumer expectations) analysis, Honda was entitled to judgment as a matter of *1320 law; accordingly, we reversed and rendered judgment for Honda. Satcher v. Honda Motor Co., Ltd., 984 F.2d 135, 138 (5th Cir.), vacated, 993 F.2d 56 (5th Cir.1993). Our court vacated its opinion, not because of a change of heart regarding Honda's entitlement to judgment under the consumer expectations analysis, but because Prestage revealed that consumer expectations was no longer the test in Mississippi. Satcher, 993 F.2d at 57-58.

. Prestage reads:
In a "risk-utility” analysis, a product is "unreasonably dangerous" if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. Thus, even if a plaintiff appreciates the danger of a product, he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates.
Id. at 254 (emphasis added). The Prestage court made this statement as a comparison between risk-utility and consumer expectations — noting that, with risk-utility, unlike consumer expectations, the plaintiff does not automatically lose only because he "appreciates the danger of a product”. Of course, the court did not mean that the opposite was true. See Id. at 254, 255 n. 3 & 4.